COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-125-CV
 
THE CITY OF SOUTHLAKE, TEXAS                                                            
APPELLANT
V.
HANSON AGGREGATE CENTRAL, INC.                                                          
APPELLEE
------------
FROM THE 342
ND DISTRICT COURT OF
TARRANT COUNTY
------------
MEMORANDUM
OPINION(1)
------------
Appellant, the City of Southlake, appeals the district court's granting
of summary judgment raising three points. Appellant claims that: 1) the district
court erred in granting Appellee's application for writ of certiorari and
entering judgment reversing the Southlake Board of Adjustment's (Board) ruling;
2) the Southlake zoning ordinance does not require that the owner intended to
abandon a legal nonconforming use in order to create a lapse of legal
nonconforming status; and 3) Appellee's cessation of use of the concrete
batching plant in question for more than six months was not excused by legal
necessity.
FACTS
Appellee, Hanson Aggregate Central, Inc., owns and operates concrete
batch plants. Appellee owned a plant located in the city of Southlake. According
to Appellant, the plant was never in conformity with city ordinances, and
Appellant had allowed it to operate as a nonconforming facility. During 1999,
Appellee's air emissions permit expired, and Appellee voluntarily ceased
operations in the plant upon the request of the State agency in charge of
issuing the air emissions permit. While the plant was closed, Appellee attempted
to obtain a new permit. At this point, the plant had not operated in eighteen
months. Once the plant received its new permit and was reopening, Appellant
ordered Appellee to stop production claiming that the plant had abandoned its
nonconforming status and could not legally operate.
Appellee filed an original lawsuit with the district court. Appellant
filed a plea to the jurisdiction claiming that Appellee had failed to exhaust
its administrative remedies. Appellee agreed to stay the district court action
and go through administrative proceedings. In those proceedings, the Southlake
Zoning Board of Adjustment upheld Appellant's decision to shut down the
operations of the plant. Appellee filed a writ of certiorari with the 342nd
District Court of Tarrant County, which consolidated the appeal with Appellee's
original lawsuit.
The district court granted a partial summary judgment motion filed by
Appellee, holding that Appellee had not abandoned operations at the plant and,
therefore, could continue its nonconforming status. The court then held a
hearing on the issue of attorney's fees. The trial court awarded Appellee
attorney's fees in the amount of $44,332.62 and, incorporating the rulings made
in the partial summary judgment, entered a final judgment in the case.
STANDARD OF REVIEW
A board of adjustment is a quasi-judicial body. Bd. of
Adjustment v. Flores, 860 S.W.2d 622, 625 (Tex. App.--Corpus Christi 1993,
writ denied). The district court may review the legality of a board's decision
by writ of certiorari. See TEX.
LOC. GOV'T CODE
ANN. § 211.011 (Vernon 2003). The only question
before the district court is the legality of the board's order, which is a
question of law. Pearce v. City of Round Rock, 78 S.W.3d
642, 646 (Tex. App.--Austin 2002, pet. denied). In reviewing a board's order,
the district court does not ask whether there is substantial evidence to support
the board's decision; rather, it asks whether, in making its determination, the
board abused its discretion. Id.; Nu-Way
Emulsions, Inc. v. City of Dalworthington Gardens, 617 S.W.2d 188, 189
(Tex. 1981). The abuse of discretion analysis requires a reviewing court to
consider whether the questions presented pertain to factual, legal, or mixed
issues. See Flores, 860 S.W.2d at 626. As a quasi-judicial
body, a board of adjustment has no discretion in determining what the law is or
in applying the law to the facts. See Walker v. Packer,
827 S.W.2d 833, 840 (Tex. 1992). In other words, a clear failure to analyze or
apply the law correctly is an abuse of discretion. Id.
DISCUSSION
In Appellant's first two points, it claims that the district court
erred in granting Appellee's application for writ of certiorari and entering
judgment reversing the Board's ruling. Appellant's argument focuses on the
meaning of Appellant's ordinance regarding the nonconforming use of property in
the city. Appellant alleges that Appellee lost its nonconforming status due to
abandonment or discontinuance of the concrete batching plant. Appellant further
argues that once the nonconforming use status ceased, any future use of the
property had to be in conformity with the applicable zoning ordinances. See
McDonald v. Bd. of Adjustment, 561 S.W.2d 218, 222 (Tex. App.--San Antonio
1977, no writ).
Appellant alleges that Appellee lost its nonconforming status through
its inaction at the site for over a year. Appellant relies on Southlake
ordinance 6.9, which states that:

 a. A nonconforming use, when discontinued or abandoned, shall not be
 resumed and any further use shall be in conformity with the provisions of this
 ordinance. Discontinuance or abandonment shall be defined as follows.
 
 When land used for a noncoforming [sic] use shall cease to be used
 in a bona fide manner for the nonconforming use for six (6) consecutive
 months or for a total of eighteen (18) months during any three (3) year
 period.
 
 b. Discontinuance or abandonment shall be conclusively deemed to have
 occurred irrespective of the intent of the property owner if the nonconforming
 use was dilapidated, substandard, or was not maintained in a suitable
 condition for occupancy during the above time periods.

Southlake, TX., Ordinance 480 § 6.9 (Sept. 5, 1989). Appellant points
to subsection 6.9(a) as authorizing its actions. Appellant contends that under
subsection 6.9(a), Appellee failed to continue its nonconforming use for well
over the six-month period required and that this inaction resulted in the
automatic loss of nonconforming status.
Appellee responded in the district court by stating that it never
intended to cease operations in the plant, and because intent is a necessary
element of abandonment or discontinuance under a city ordinance, it never lost
its nonconforming status. Appellant concedes that there is no evidence to prove
that Appellee intended to abandon or discontinue the nonconforming use of the
property. Appellant also concedes that all Texas cases that have ruled on the
issue have held that intent is implied in the definition of abandonment.(2)
Appellant states that the case law which covers this question is based on cases
where abandonment and discontinuance were not defined in the ordinance.
In this case, the ordinance provides a definition. Appellant claims
that this means that the case law does not apply. We agree. The Texas Supreme
Court has held that "[a]s a starting point, we construe statutes as written
and, if possible, ascertain intent from the statutory language." Marcus
Cable Assoc., L.P. v. Krohn, 90 S.W.3d 697, 706 (Tex. 2002); see
also Sec. Nat'l Ins. Co. v. Farmer, 89 S.W.3d 197, 201 (Tex. App.--Fort
Worth 2002, no pet.) ("If possible, we must ascertain the legislature's
intent from the language it used in the statute and not look to extraneous
matters for an intent the statute does not state."). We apply the same
rules when construing an ordinance as we do when we construe a statute. Bd.
of Adjustment of City of San Antonio v. Wende, 92 S.W.3d 424, 430 (Tex.
2002). Generally, we accept the words used according to their ordinary meaning
unless given a specific statutory definition. Cities of Austin,
Dallas, Fort Worth and Hereford v. S.W. Bell Tel. Co., 92 S.W.3d 434, 442
(Tex. 2002). In this case, we hold that the definition of abandonment and
discontinuance can be ascertained from the language of the ordinance, and so the
district court should not have resorted to case law for a definition. See
Farmer, 89 S.W.3d at 201. We must now determine if intent was included in
the definition of the ordinance.
We hold that in this case, the ordinance uses abandonment and
discontinuance interchangeably, so that one definition exists for the two words.
Further, the ordinance provides its own stated definition of what abandonment
and discontinuance means. Under section 6.9(a)(1), it states that nonconforming
use status lapses "[w]hen land used for a noncoforming [sic] use shall
cease to be used in a bona fide manner for the nonconforming use for six (6)
consecutive months or for a total of eighteen (18) months during any three (3)
year period." An intent requirement is not mentioned in subsection 6.9(a).
If we were to stop our analysis here, we would hold that there is no intent
requirement in the ordinance, but the Texas Supreme Court has held that we
should not interpret an individual subsection of an ordinance in isolation from
the rest of the ordinance. See S.W. Bell, 92 S.W.3d at 442
(stating that a court must attempt to avoid construing an ordinance provision in
isolation from the rest of the ordinance). This means that we must consider the
ordinance as a whole, and not just a single phrase, clause, or sentence. Id.;
Morrison v. Chan, 699 S.W.2d 205, 208 (Tex. 1985).
When we read subsection 6.9(a) in conjunction with subsection 6.9(b),
we see that Appellant intended to include intent in the definition of
abandonment and discontinuance. Subsection 6.9(b) states that discontinuance or
abandonment is "conclusively deemed to have occurred irrespective
of the intent" if the property is in disrepair. (Emphasis added) This
subsection specifically excludes intent in situations where the property is in
disrepair and the nonconforming use has ceased for the required period of time.
Therefore, subsection 6.9(a) does not exclude intent. We presume that the
legislative body intended to word the ordinance in the manner it did. See
Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex. 1981)
(stating that we must presume that the city used every word of the ordinance for
a purpose). If Appellant intended to exclude intent in 6.9(a), it could have
used the same wording as subsection 6.9(b) did. Further, if subsection 6.9(a)
already excluded intent as an element, then it would not be necessary to
specifically exclude intent in subsection 6.9(b). We hold that the only
reasonable interpretation of Southlake's ordinance is that intent was included
in subsection 6.9(a). See Fireman's Fund County Mut. Ins. Co.
v. Hidi, 13 S.W.3d 767, 769 (Tex. 2000) ("When the Legislature has
employed a term in one section of a statute and excluded it in another, we
presume that the Legislature had a reason for excluding it.").
Because Appellant conceded that Appellee never intended to abandon or
discontinue its nonconforming use, Appellee did not lose its nonconforming use
status. The Board ruled that Appellee lost its nonconforming status through its
inactivity at the property. Because the Board's ruling is in conflict with the
proper definition of the ordinance, the Board abused its discretion, and the
district court did not commit error by reversing its ruling. See
Walker, 827 S.W.2d at 840. We overrule Appellant's first and second points
on appeal and hold that the district court did not commit error.
Because our ruling on Appellant's first two points is decisive, we do
not address Appellant's final point on appeal. See TEX.
R. APP. P. 47.1.
CONCLUSION
Having held that the district court did not err in overturning the
Board's decision, we affirm the district court's judgment.
 
                                                                        
SAM J. DAY
                                                                        
JUSTICE
 
PANEL A: DAY, LIVINGSTON, and DAUPHINOT, JJ.
DELIVERED: April 24, 2003

1.  See T
EX. R. APP.
P. 47.4.
2.  See Turcuit v. City of Galveston, 658
S.W.2d 832, 834 (Tex. App.--Houston [1st Dist.] 1983, no writ.); McDonald,
561 S.W.2d at 222; Rosenthal v. City of Dallas, 211 S.W.2d
279, 284 (Tex. Civ. App.--Dallas 1948, writ ref'd n.r.e.).